**Opinion issued March 26, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00729-CV**

———————————

**IN THE INTEREST OF R. J., JR., A CHILD**

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case No. CV29910

## DISSENTING OPINION

Before the Texas Department of Family and Protective Services intervened in E.M.'s and her husband R.J.'s lives, and the lives of their children, the family's circumstances were untenable. E.M. and R.J. struggled with homelessness and finding steady employment. R.J. had the additional barriers of debilitating mental illness resulting in multiple suicide attempts since childhood and a long-standing

history of drug use, including benzodiazepines, amphetamine, and methamphetamine. After E.M. and R.J. failed to discontinue the use of drugs and to participate in services in 2015, the Department asked them to leave their son "Ray" with his grandmother and to find somewhere else to live. Ray was just nine months old when he was removed from his parents.

E.M. and R.J. moved to a small town about five hours from where the Department eventually placed their son. E.M. began working as a floor manager at the local Denny's, and R.J. eventually worked as a cook. They were able to stagger their shifts so that they did not require outside child care. They had health insurance.

They lived with their youngest son, Alex, and E.M.'s three children from a prior relationship came to live with them in 2017. They lived in a house that they wanted to buy someday. Under the parents' supervision, the children were reading 35 to 40 minutes per day. Shortly before the hearing that terminated their parental rights, E.M. and R.J. were able to obtain a vehicle.

While E.M. and R.J. worked imperfectly at putting their lives together, the Department was successful in terminating their parental rights as to Ray's younger sister, Jane. That termination was used as a predicate finding to terminate their rights as to Ray in this case. Ray's case lasted 28 months. Although under current law, if Ray's case had remained unresolved as long as it did, the court would have

2

lost jurisdiction to terminate parental rights, that law was not in effect when this case began. Because the case lasted most of Ray's life, it is not surprising that he bonded with his foster placement.

Although he had been in therapy for two years by the time of the termination hearing and intended to continue it, R.J. reported that he had reduced or eliminated his psychiatric medications by the time of the termination hearing. When he was not taking his medications in 2016, he used cocaine and attempted to commit suicide shortly after Jane was born. E.M. saved his life.

R.J. continued to struggle. In April 2018, after consuming alcohol, he allegedly pushed E.M. into a chair, prompting a Department investigation into the welfare of their youngest child after police were called. R.J. was required to move out of the house. He moved back in shortly before Ray's termination hearing.

In addition to a predicate violation, the party seeking to terminate another's parental rights must establish by clear and convincing evidence that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(2); *see id*. § 153.002. The clear and convincing standard is the degree of proof that will produce in the mind of the trier of fact a "firm belief or conviction" as to the truth of the allegations sought to be proved. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (quotation and citation omitted). There is a strong presumption that the child's best interest will be

served by preserving the parent-child relationship. *In re J.F.C.*, 96 S.W.3d 256, 294 (Tex. 2002). To prevail, the Department must rebut this presumption.

The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, appellate courts strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

Because of the strong presumption that maintaining the parent-child relationship is in the child's best interest, "the best interest standard does not permit termination merely because a child might be better off living elsewhere. Termination should not be used to merely reallocate children to better and more prosperous parents." *In re W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.) (citation omitted); *see In re E.N.C.*, 384 S.W.3d at 809.

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding: the desires of the child; the physical and emotional needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental

abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The *Holley* factors are non-exclusive. *See id.* at 372. In evaluating Ray's best interest, it would seem proper to take account of the significant strides E.M. and R.J. made. *See In re K.C.M.*, 4 S.W.3d 392, 399 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (reversing parental termination where mother "turned her life around" in jail because a "firm belief or conviction" that the best interest of the child required termination of mother's rights "could not be fairly reached"), *disapproved of on other ground by In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). To rise from being unstable in housing, transportation, and employment to obtaining stable full-time work with benefits and being able to rent a three-bedroom home and reunite with children who had to be placed with relatives is noteworthy. The parents have become able to provide for the physical needs of their children, including Ray. *See Holley*, 544 S.W.2d at 372. Spending time daily reading and playing with their children and thinking about the children's college education is tending to the emotional needs of the children now and in the future. *See id.*

Once a family is under the Department's microscope and one child is removed for neglect or endangerment, return of other children can become a Herculean task. This is especially so where the family suffers from addiction, mental illness, housing instability, poverty, or, in this case, all four. When the proceedings take more than two years and parent-child visits are logistically difficult, it is very easy to find that a child too young to state his preferences has bonded to his new caretakers. E.M. and R.J. have improved dramatically in two years. But as the pushing incident shortly before trial demonstrates, R.J. is not completely recovered.[1] In looking at all the evidence, not just the evidence

---

[1]     Although under different circumstances this Court has concluded that "[e]vidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future," *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied), using R.J.'s 2013 conviction to permit an inference that he will be abusive toward E.M. or his children in the future is not well supported. First, the offense occurred before R.J. sought treatment for his PTSD and two years before Ray was born. Second, there is no information that the offense was directed toward E.M. or any other details about the offense. Third, in *Jordan*, the father was a sex offender, had pushed, kicked, and punched the mother in the face while she was pregnant with the child on at least 10 occasions, and, after the child was born, the mother saw blood and bruises on the child after the child was in the father's care. *Id*. at 707. The facts in *Jordan* were sufficient to show a course of conduct that would permit an inference about future conduct. Without knowing more, one assault conviction before Ray was born and one incident with the mother four years later does not give a factual trajectory that would support an inference of future violent conduct here. Assault, even felony assault, may be committed by offensive touching or reckless conduct. TEX. PENAL CODE § 22.01(a)–(b). The inference here is also less well founded because R.J. has engaged in prolonged therapy and medication to address his mental health. The inference is not the kind that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations." *See In re J.O.A.* 283 S.W.3d 336, 344 (Tex. 2009) (citing TEX. FAM. CODE § 101.007).

supporting the termination decision, *In re J.F.C.,* 96 S.W.3d at 264, E.M. and R.J. are not perfect parents; given their improvements, however, the evidence was not factually sufficient to conclude that termination would be in Ray's best interest.

## Conclusion

In light of the dramatic improvements that E.M. and R.J. made in terms of their ability to care for the physical and emotional needs of their children, including Ray, there was factually insufficient evidence that termination was in Ray's best interest. I respectfully dissent.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Justice Landau, dissenting from the judgment.

7